IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULIETTE ROMERO, O/B/O J.T.R, a minor, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. ) | Case No. CIV-19-71-SM |

# MEMORANDUM OPINION AND ORDER

Plaintiff Juliette Romero brings this action on behalf of her minor son, J.T.R., pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of the Commissioner of Social Security's final decision denying her claim for J.T.R.'s supplemental security income benefits under Title XVI of the Social Security Act. The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 8, 14.[1] After a careful review of the record (AR), the parties' briefs, and the relevant authority, the court reverses the Commissioner's decision.

---

[1] Citations to the parties' pleadings will refer to this Court's CM/ECF pagination. Citations to the Administrative Record will refer to its original pagination.

## I. Administrative determination.

### A. Disability standard.

A person under the age of eighteen is disabled within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906. No individual under the age of eighteen will be considered disabled if he or she is engaging in substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(C)(ii).

The Social Security Regulations establish a three-step sequential evaluation to determine whether an individual under the age of eighteen is disabled under Title XVI of the Act. 20 C.F.R. § 416.924; *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). At step one, the Commissioner must determine whether the child is engaged in substantial gainful activity. If the answer is no, the inquiry proceeds to the second step. 20 C.F.R. § 416.924(a), (b). At step two, the Commissioner must determine whether the child has an impairment or combination of impairments that is severe. If the impairment or combination of impairments is not severe, the inquiry is at an end. *Id.* § 416.924(a), (c). If it is severe, the Commissioner must ask whether the child's impairment meets, medically equals, or

2

functionally equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404, and meets the durational requirement. *Id.* § 416.924(a) and (d); *see also Briggs*, 248 F.3d at 1237.

To meet a listing, the ALJ must determine whether a child's impairment or combination of impairments "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement."[2] 20 C.F.R. § 416.925(c)(3). If a child's impairment fails to meet all the criteria, the ALJ must determine whether the child's impairment "medically equal[s] the criteria of a listing." *Id.* § 416.925(c)(5). Medical equivalency can be found if an impairment "is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a). Even if a child "do[es] not exhibit one or more of the findings specified" for the particular listing examined, or "one or more of the findings is not as severe as specified," but there are "other findings related to [the] impairment that are at least of equal medical significance to the required criteria," then medical equivalency can still be found. *Id.* § 416.926(b)(1)(i)-(ii).

If the ALJ determines that a child's impairment or combination of impairments does not meet or medically equal a listing, then functional equivalencies must be considered. *Id.* § 416.926a(a). To determine functional

---

[2]  An impairment cannot meet a listing based only on a diagnosis. 20 C.F.R. § 416.925(d).

equivalency the ALJ must analyze the evidence in terms of each of the six domains of functioning: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. *Id.* § 416.926a(a), (b)(1). Functionally to equal a listing an impairment must cause "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(a).

**B.     Relevant findings.**

**1.     Administrative Law Judge's findings.**

The ALJ assigned to J.T.R.'s case applied the standard regulatory analysis in order to decide whether J.T.R. was disabled during the relevant timeframe. AR 11-25; *see* 20 C.F.R. § 416.924(a). The ALJ found J.T.R.:

(1) was born on February 2, 2005 and was a school-aged child on May 11, 2016, the date the application was filed, and at the time of the decision;

(2) had not engaged in substantial gainful activity since May 11, 2016;

(3) had the following severe impairments: attention deficit hyperactive disorder; posttraumatic stress disorder; anxiety disorder, and oppositional defiance disorder;

(4) had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

(5) had no impairment or combination of impairments that functionally equaled the severity of the listings; and

4

(6) had not been disabled, as defined in the Social Security Act, since May 11, 2016, the date the application was filed.

AR 13-25.

### 2. Appeals Council's findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision. *Id.* at 1-4; *see Panas ex rel. M.E.M. v. Comm'r*, 2019 WL 2543867, at *1 (10th Cir. Aug. 5, 2019).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks omitted)). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). The court will

"neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

B.   **Issues for judicial review.**

Plaintiff raises three points of error. First, that the ALJ "improperly weighed the medical source evidence." Doc. 15, at 7. Second, that the ALJ ascribed no weight to the CANA Counseling records which included Mental Health Service Plans and Client Assessment Records from three plus years of counseling. *Id.* at 9, 11-12. And finally, that the ALJ erred in his step-three analysis. *Id.* at 12.

With respect to her third claim, Plaintiff argues the ALJ improperly reviewed the evidence and "dismissed" the consideration of Listing 112.11. *Id.* at 13. Plaintiff asserts the ALJ should have found J.T.R.'s functioning in the area of adapting or managing oneself to be marked which would have, when coupled with the ALJ's finding that J.T.R. had a marked limitation in the area of acquiring or using information, met Listing 112.11. *Id. See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11.

The undersigned agrees the ALJ erred in his step-three consideration of Listing 112.11 and reverses and remands this case for further consideration.

C.   **Discussion.**

Plaintiff argues in her third point on appeal that the ALJ "dismissed" consideration of Listing 112.11 for J.T.R.'s severe impairments. Doc. 15, at 12-13. In response, the Commissioner argues the ALJ's decision should be affirmed because the record contains "no medically documented findings of marked inattention or hyperactivity." Doc. 19, at 12-13. The Commissioner then points to the ALJ's consideration of the evidence for functional equivalence and argues "the ALJ reasonably found that Plaintiff did not meet her burden to show all the requirements for Listing 112.11 had been met . . . ." *Id.* at 14. The undersigned disagrees with the Commissioner's argument.

D.   **Analysis.**

Mental disorders in children are evaluated in the listings for both medical criteria which must be present in the medical evidence (Paragraph A), and functional criteria (Paragraph B), which represent the areas of mental functioning a child uses to perform age-appropriate activities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(2).[3] The age-appropriate activities evaluated

---

[3]   Symptoms and signs of neurodevelopmental disorders in children may include: "underlying abnormalities in cognitive processing (for example, deficits in learning and applying verbal or nonverbal information, visual perception, memory, or a combination of these); deficits in attention or impulse control; low frustration tolerance; excessive or poorly planned motor activity; difficulty with organizing (time, space, materials, or tasks); repeated accidental injury; and deficits in social skills." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(9)(a).

under Paragraph B include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.*

The Listing at issue, § 112.11, has the following criteria:

112.11 Neurodevelopmental disorders (see 112.00B9), for children age 3 to attainment of age 18, satisfied by A and B:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

1. *One* or both of the following:

a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor"),

2. Significant difficulties learning and using academic skills; or

3. Recurrent motor movements or vocalizations.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

1. Understand, remember, or apply information (see 112.00E1).

2. Interact with others (see 112.00E2).

3. Concentrate, persist, or maintain pace (see 112.00E3).

4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11.

In a child disability case, it is the ALJ's duty to examine all the evidence in the record to determine, "with appropriate reasoning," whether a child's impairment "meets, medically, or functionally equals a listing." *Bledsoe ex rel. J.D.B. v. Colvin*, 544 F. App'x 823, 826 (10th Cir. 2013). A conclusory statement that a child's impairments do not meet or medically equal a listing "does not fulfill the ALJ's requirement to 'make a specific finding as to the degree of limitation in each of the functional areas' used to determine whether a mental impairment meets a listing . . . and is a 'bare conclusion [that] is beyond meaningful judicial review.'" *Smith ex rel. E.S.D v. Barnhart*, 157 F. App'x 57, 65 (10th Cir. 2005) (quoting 20 C.F.R. § 416.920a(e)(4) and then quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)); *see also Corley ex rel. C.M.C. v. Comm'r*, 752 F. App'x 635, 642 (10th Cir. 2018) (noting "generalized, conclusory treatment" in the consideration of a listing is inadequate under *Clifton* "which required the ALJ 'to discuss the evidence and explain why he found'" the child claimant did not meet or equal a considered listing (quoting *Clifton,* 79 F.3d at 1009)); *Huffman ex rel. B.H. v. Astrue*, 290 F. App'x 87, 89 (10th Cir. 2008) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that B.H.'s impairments did not

meet or equal any listed impairment." (internal alterations and quotation marks omitted)).

At step three on the question of whether J.T.R.'s severe impairments met or medically equaled Listing 112.11, the ALJ stated:

> The undersigned has considered Listing 112.11, neurodevelopmental disorders for children age 3 to attainment of age 18. The claimant does not fulfill one or both of the requirements of paragraphs 1, 2, or 3 under section A and does not exhibit an extreme limitation of one, or marked limitations of two of the areas of mental functioning known as the "B" criteria. Thus, the claimant does not meet or equal Listing 112.11.

AR 13. The ALJ's statement that J.T.R.'s severe impairments did not meet or medically equal Listing 112.11, with no attached reasoning or any reference to the evidence, is a bare conclusion which this court cannot meaningfully review. *Clifton*, 79 F.3d at 1009. This error requires reversal. *See id.* ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."); *see also Melrose ex rel. N.M. v. Berryhill*, 2018 WL 3579481, at *2 (W.D. Okla. July 24, 2018) (reversing and remanding after finding the ALJ's insufficient consideration as to whether Plaintiff met or medically equaled Listing 112.11 "was deficient on its own").

As the parties recognize, after determining J.T.R. did not meet or medically equal Listing 112.11, the ALJ proceeded to discuss the evidence relevant to whether J.T.R.'s impairments or combination of impairments were *functionally equivalent* to a listing, particularly as the evidence applied to the six domains of functioning. AR 19-25.[4] Even though the ALJ later discussed functional equivalencies, this "discussion of the functional equivalence domains does not serve as a substitute for the requisite analysis of the [four] functional areas." *Smith*, 157 F. App'x at 65; *see also Huffman*, 290 F. App'x at 89 (disagreeing that the ALJ's lack of specific findings concerning whether the child's impairments met a listed impairment were "saved" by the ALJ's detailed discussion of the six domains used to measure functional equivalency); *Melrose*, 2018 WL 3579481, at *3 (noting that "the ALJ's subsequent analysis of functional equivalency cannot serve as the primary support for a finding that a child claimant does not meet or medically equal a Listing"). "To be sure, the categories are similar; however, the Commissioner's rules for determining childhood disability claims explain that the six 'domains are specifically designed for determining functional equivalence and are completely delinked

---

[4] The ALJ found that J.T.R.'s impairments were not functionally equal to a listed impairment because his functional limitations were "marked" in only one category, that of acquiring and using information, were "less than marked" in two other categories, and there was no limitation in the remaining three. AR 19-25.

from the mental disorders and other listings.'" *Huffman*, 290 F. App'x at 89 (quoting 65 Fed. Reg. 54746, 54755 (Sept. 11, 2000)); *accord Smith*, 157 F. App'x at 65; *Vigil ex rel. V.D.V. v. Berryhill*, 2018 WL 1182404, at *3 (D. Colo. Mar. 7, 2018) ("Although there is some overlap between the medical and functional equivalence inquiries, they are not entirely coextensive."). *But see Johnson ex rel. J.K.J. v. Colvin*, 2013 WL 3216064, at *4 (N.D. Okla. June 24, 2013) ("At first blush, the language in *Huffman* appears to be on point. However, this court does not read that unpublished decision as establishing a rule that the ALJ's failure to fully discuss the listings in a child's disability case can never be overcome by a thorough analysis of whether the child meets the functional equivalence of a listing.").[5] Therefore, the ALJ's functional equivalency discussion, while lengthy and detailed, cannot be substituted or serve as the primary support for a finding that J.T.R. did not meet or medically equal the criteria of Listing 112.11. Accordingly, reversal and remand on this basis is appropriate. *Melrose*, 2018 WL 3579481, at *3; *Vigil*, 2018 WL 1182404, at *3.

### E. Remaining claims.

The court "will not reach the remaining issues raised by [Plaintiff] because they may be affected by the ALJ's treatment of this case on remand."

---

[5] This court has disagreed with the reasoning set forth in *Johnson*. *See Melrose*, 2018 WL 3579481, at *3 n.4.

12

*Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  While the court takes no position on the merits of Plaintiff's disability claim, on remand the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Plaintiff.

**F.    Conclusion.**

Based on the foregoing analysis, the decision of the Commissioner is reversed and the case remanded for further proceedings in accordance with this memorandum opinion and order.

**ENTERED** this 20th day of August, 2019.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE